No. 2,255.

DAVID HEWES, RESPONDENT, v. CHRISTIAN REIS, et al. APPELLANTS.

STREET ASSESSMENT IN SAN FRANCISCO.—DESCRIPTION OF PROPERTY.—An assess_
ment for grading a street in San Francisco, which gives the numbers of
the lots to be assessed as shown upon a diagram attached to the assess-
ment, and the frontage of each lot, and refers to the diagram for further
description, sufficiently describes the property to be assessed.

IDEM.—UNKNOWN OWNERS.—The word "unknown" written in the assess-
ment opposite the number of the lot, is sufficient to show that the name
of the owner was unknown to the Superintendent of Streets, and is an
exact compliance with the statute in that respect.

IDEM.—POWER TO LEVY TAX.—Where the statute requires a series of acts to
be performed before the owners of the property are properly chargeable
with the tax, such acts are conditions precedent to the exercise of the
power to levy the tax, and all the requirements of the statute must be
complied with, or the tax cannot be collected.

IDEM.—POSTING OF NOTICE INVITING PROPOSALS.—The posting of the notice
inviting proposals for the execution of work, in the office of the Super-
intendent of Streets, for a period of three days instead of five, as required
by law, is a violation of the statute in a matter affecting the substan-
tial rights of persons interested, and is such a defect as renders all the
subsequent proceedings void

APPEAL from the District Court of the Twelfth District,
City and County of San Francisco.

The facts are stated in the opinion.

*Jarboe & Harrison*, for Appellants.

*First*—The lots of land described in the complaint were
not described in the assessment.

In order to validate an assessment upon real estate, it
is necessary that the real estate should be accurately de-
scribed. (*Tallman* v. *White*, 2 Comst. 66; *Lachman* v.
*Clark*, 14 Cal. 133; *Sharp* v. *Spier*, 4 Hill. 89; *Raymond* v.

*Longworth,* 4 McLean, 481; *Keane* v. *Cannovan,* 21 Cal. 291.)

It is not sufficient to refer to the diagram for a description of the lots. That would be to make the diagram the chief element in the assessment, rather than a subordinate means of identification. Section 8 of the Act (Stat. of 1863, p. 527), provides that the expense shall be assessed "upon the lots and lands," "each lot being separately assessed," and Section 9 declares that the Superintendent shall "make" an assessment in conformity with Section 8, which assessment "shall have attached thereto a diagram showing the relative location of each lot, numbered to correspond with the numbers in the assessment."

An examination of these sections will establish, that the assessment must itself contain a description of the lot assessed. It is nowhere provided that a reference may be made to another paper for a description. The very phrase "assessment upon a lot," does *ex vi termini* mean, that not only the amount of the assessment, but also that the description of the lot assessed shall be contained in the assessment; otherwise it is not an assessment upon the lot.

*Second*—The lot in question was not properly assessed, even if sufficiently described. Section 9 of the statute aforesaid, declares that "the assessment shall *show* the name of the owner of each lot, if known to the Superintendent; if unknown, the word 'unknown' shall be written opposite the number of the lot." The Superintendent has no jurisdiction or authority to assess to "unknown" owners, and, in that way, create a charge and lien upon the land, unless in fact the *name of the owner* of the lot assessed is unknown *to him*; and such fact must appear upon the assessment. The authority to assess in this manner, and notify the owner of the lot of the assessment, is a special, exceptional, statutory authority conferred upon the Superintendent only in a certain expressed case, and like all statutory authority to be exercised by inferior magistrates, officers or tribunals, the circumstances warranting its exercise must appear upon the face of the instrument, which shows that the authority has been exercised. (*Christie* v. *Unwin,* 11

Ad. & E. 373; *Rex* v. *Croke*, Cowp. 26; *Rex* v. *Manning*, 1
Burr, 377; *Rex* v. *Mayor of Liverpool*, 4 Id. 2224; *Rex* v.
*Bagshaw*, 7 T. R. 363; *Garner* v. *Carroll*, 7 Yerg. 365; *Trees*
v. *Ford*, 2 Seld. 176; *Turner* v. *Bank of N. A.* 4 Dallas, 8;
*Thatcher* v. *Powell*, 6 Wheat. 119; *Donahue* v. *McNulty*, 24
Cal. 411; *Jalley* v. *Faltz*, 34 Id. 326; *Hall* v. *Hind*, 10 Conn.
514; *Sullivan* v. *Fulton Steamboat Co.* 6 Wheat. 450; *Ham-
ilton* v. *Brewer*, 3 Yerg. 355.) In *Kesey* v. *Abbott*, (13 Cal.
609), it was held that the revenue law required unoccupied
lands to be "listed in the name of the owner if known, other-
wise as lands of persons unknown," and an assessment which
was not in the name of the owner and did not *show* that the
owner was unknown, was insufficient to create any charge
(pp. 617–19). The same principle is laid down by this
Court in *Moss* v. *Shear*, (25 Cal. 46).

*Third*—The Board of Supervisors never had any author-
ity to award the contract for doing the work, and all the pro-
ceedings subsequent thereto, viz., the contract itself, the
assessment and the warrant, were void, and conferred no
authority or right upon the plaintiff, or against the defend-
ants.

1st. Section 6 of the Act (Stat. 1862, p. 393,) declares
that "before giving out any contract by the Board of Su-
pervisors for doing any work authorized by Section 3 of this
Act, the Board of Supervisors shall cause notice to be con-
spicuously posted in the office of the Superintendent of
Public Streets and Highways, and also published for five
days, inviting sealed proposals for the work contemplated."

The Board of Supervisors did not comply with this re-
quirement of the statute. They never " caused" any notice
inviting sealed proposals to be posted in the office of the
Superintendent. The only resolution ever passed by
them on the subject, is in these words; " and that the Clerk
is hereby authorized to advertise for proposals to do the
above work."

This resolution does not comply with the requirements of
the statute that the Board shall " cause" the notice to be
posted and published, for various reasons:

CAL. REP. XL.—17

(*a*) The Clerk is simply directed to *advertise* for proposals.

(*b*) He is not authorized to *post* the notice in the office of the Superintendent of Public Streets.

(*c*) There is no authority conferred upon any one to post the notice there.

(*d*) The Clerk is not authorized to advertise for proposals for any length of time whatever—nor for the five days which the statute prescribes.

The act of the Clerk of the Board inviting the proposals, and posting the notice is wholly unauthorized and officious. He is not authorized by any law or custom to post this notice without an especial order to that effect, (*Heyman* v. *Babcock*, 30 Cal. 367); nor was he warranted in posting the notice from the mere fact that the Board had ordered the work to be done.

" Where certain steps are authorized by statute in derogation of the common law, by which the title of one is to be divested and transferred to another, every requisite having the semblance of benefit to the former must be complied with." (*Atkins* v. *Kinnan*, 20 Wend, 249; *Culver* v. *Hayden*, 1 Vt. 364; *Williams* v. *Peyton*, 4 Wheat. 82.)

If no authority existed to award the contract, or to authorize the Superintendent to enter into any contract for doing the work, any contract entered into by him is void so far as the rights of the defendants are concerned, and any assessment based upon the work done by virtue of that contract is utterly void, and creates no lien upon the property, or right against the defendants. (*Menser* v. *Risdon*, 36 Cal. 239.)

2d. The Clerk did not advertise for proposals; no invitation was ever given by him to bidders to compete for the work. The notice inviting proposals is signed by, "George Cofran, Supt. of Public Streets and Highways."

3d. The notices remained posted in the office of the Superintendent for only three days.

*C. H. Parker*, for Respondent.

*First*—The diagram is as much a part of the assessment as the number of feet frontage, or the number of the lot, and the description of the lot may appear on the diagram as well as on the sheet. The assessment and diagram, taken together, show to a "moral certainty" what the figures mean.

In *The City of Chicago* v. *Wheeler*, (25 Ill. 481,) a case involving a similar question to this, the Court say: "If it appears from any part of the report what the figures were designed to represent it will suffice." (See also *Gibson* v. *City of Chicago*, 22 Id. 566. *People* v. *Empire G. and S. M'g Co.* 33 Cal. 174, affirmed in 33 Id. 440.)

*Second*—The second point made by appellants is settled against them by the decision in *Himmelmann* v. *Steiner*, (38 Cal. 175,) after rehearing granted.

*Third*—1st. The evidence shows that the Clerk published a notice as required by law in a newspaper, and posted, as required by law, in the Superintendent's office, and, therefore, he "advertised" the facts required by law to be made known, by both publishing and posting. The direction of the Board to advertise, was therefore complied with.

2d. The notice is entitled in the office of the Board of Supervisors, and is signed by the Clerk of said Board at the end thereof. All the notices for proposals are prepared the same way, and ever have been; and if these notices are not good, or are held fatally defective, then no street assessment can be collected.

3d. The Clerk could not, either in fact or in law, limit the time for receiving bids to Saturday at 4 P. M. The limitation was simply a nullity; it could not and did not prevent any person from handing in his proposal either on Saturday or on the next Monday. The case of *Menser* v. *Risdon*, (36 Cal. 239,) cited by appellants, is to the point in this case— that the action of the Clerk had no legal effect to the prejudice of the bidders, or of property owners. In that case

he did an act which the law required to be done, but without authority from the Board—such authority being a prerequisite; in this case he volunteered to do an act which was not required by law to be done, and which could not be done either with or without direction of the Board, and which, when done, was inoperative for any purpose; an act which all persons were bound to know was unauthorized and void—one which concluded no one. What the law required to be done in this case, by way of "publishing," was in fact done both in letter and spirit.

A further and complete answer, however, to all these objections, is found in cases already adjudicated in this Court. The appellants should have called the attention of the Board to the irregularity, and have had the same corrected by them during the progress of the proceedings. (*Cochrane* v. *Collins*, 29 Cal. 129; *Emery* v. *Bradford*, Id. 75; *Taylor* v. *Palmer*, 31 Id. 241; *Smith* v. *Cofran*, 34 Id. 314; *Conlin* v. *Seaman*, 22 Id. 546; *Beaudry* v. *Valdez*, 32 Id. 277; *Nolan* v. *Reese*, Id. 487.) If the Clerk had not properly published notice for bids, the Board could have ordered him to do it properly. The law charged appellants with notice of this defect (if it be one) then, and the objections now urged by counsel could have been urged then. Now it is too late and I make this point as to the statute, and it is fundamental—if he could have been heard then, he cannot be heard now. This proposition is self-evident, and it is equally so that he could have been heard then. Knowing of the defect (if it be one) then, and not making any objections, he is deemed to have waived it—to have acquiesced in it.

TEMPLE, J., delivered the opinion of the Court, WALLACE, J., RHODES, C. J., and SPRAGUE, J., concurring:

Action upon a street assessment for grading a portion of Townsend street, San Francisco. To support his claim the plaintiff introduced the assessment, warrant, diagrams and return, which were objected to on various grounds, and the rulings of the Court in admitting them against the objections of the defendants are assigned as error.

The first objection is that the assessment does not contain a description of the property, and the particular point of the objection is, that the assessment refers to the diagram attached thereto to complete the description, which otherwise is imperfect.

There is no requirement that the assessment shall be upon one sheet of paper only, and if the description referred to had been upon a separate paper, attached to the paper containing the statement of the amounts assessed, it would probably not have been considered objectionable. The fact that the diagram is also a requirement of the law does not vitiate the reference for the purpose of helping out the description in the assessment. For that purpose it may be regarded as an exhibit attached to and made a part of the assessment. But the very purpose of requiring a diagram to be attached to the assessment is to aid the description given in the assessment, and to enable persons interested to ascertain with greater certainty what property is assessed. The assessment gives the numbers of the lots as shown upon the diagram, the frontage of each lot, and refers to the diagram for further description. Taking the assessment and the diagram referred to in it together, we have no trouble in making out the description of the lot precisely as given in the complaint.

The second point is that the lot is not assessed to the owner, and that it does not appear that the name of the owner was unknown to the Superintendent. In the assessment the word "unknown" is written opposite the number of the lot. The statute provides that the assessment shall show the name of the owner, if known; if unknown to the Superintendent, that the word "unknown" shall be written opposite the number of the lot. This assessment is an exact compliance with the statute, and, read with the statute, shows as effectually as the most elaborate certificate could that the lot was assessed to unknown owners because the name of the owner was unknown to the Superintendent. (See *Himmelmann* v. *Steiner*, 38 Cal. 175).

The third objection is that the Board of Supervisors never had any authority to enter into the contract in question, because,

*First*—The Board did not cause the notice inviting sealed proposals to be posted in the office of the Superintendent of Streets for five days.

*Second*—The Clerk did not advertise as directed by the Board.

*Third*—No notice was posted in the Superintendent's office.

The proof shows that the notice was published on the 14th of August, and specified that no bids would be received after the 17th of the same month—that is, that bids would only be received for three days after the notice was posted as required by the statute. The law provides that before giving out any contract the Board shall cause notice to be published and posted for five days inviting sealed proposals. In the notice given, parties who might bid are expressly notified that bids would not be received after the third day. This is clearly a violation of the statute, and in a matter affecting the substantial rights of persons interested, and there can be no question that ordinarily such a defect would render subsequent proceedings entirely void. It is a condition precedent to the action of the Board in letting the contract, and the notice evidently was not published and posted as required by law.

But it is claimed that the Board acquired jurisdiction to order the work to be done by the publication of the notice of intention; that the subsequent proceedings are merely ministerial, and the statutory provisions concerning them directory, and that an error in those proceedings would not vitiate the tax; that the proceedings are but steps taken to impose upon the defendants a tax; that the statute has provided a remedy for any persons who may feel aggrieved by any action of the Board in the matter—that is, by remonstrance or petition to the Board—and that the remedy thus provided is exclusive of any other.

It is perfectly evident that the provisions of the law in regard to appeals to the Board of Supervisors can have no

bearing upon the case.   The action complained of is that of the Board itself, in letting the contract without giving the notice required by law.   It would be absurd to provide an appeal from the Board to itself.   The only remedy provided by the statute, therefore, is that the parties may appear before the Board while the matter is *in fieri,* and by petition or remonstrance make known their objections.   That is to say, the defendants might have appeared before the Board at the time they proposed to open the bids and award the contract, and make their objections to their doing so, on the ground that the notice had not been published as required by law.

The defendants were not parties to the contract for grading the street, nor to the proceedings which led to it.   It was competent for the Legislature to have authorized the Board to make the contract without publishing a notice of intention and without inviting bids, and then to have compelled the defendants to pay the amount through its sovereign power of taxation. The Board, however, is required to publish a notice of its intention to contract for grading the street, before it has the power to order the work to be done. It is then placed in just the position it might have been placed in without any publication at all.   That is to say, it has power or jurisdiction to act. The statute then proceeds to prescribe the mode in which it shall exercise this power. It is a proceeding in derogation of the common law, by which the title of one may be divested and transferred to another, and every requisite having the semblance of benefit to the former must be complied with,

Nor do we see how the right to appear before the Board and remonstrate while the proceedings are *in fieri,* can be said to afford a remedy for an illegal act done by the Board.

The statute requires a series of acts to be performed before the defendants are properly chargeable with the tax. All the requirements of the statute must be complied with or the tax cannot be collected.   The right to appear before the Board and object cannot certainly excuse the performance of these acts, which are conditions precedent to the

exercise of the power; nor does this right of remonstrance possess the least semblance of a remedy for a wrong that may be committed notwithstanding the protest.

As to those matters concerning which an appeal lies to the Board of Supervisors, a very different rule prevails, as has been held by numerous decisions. They are such matters as are primarily under the control of the Superintendent of Streets, and in regard to which, if errors have been committed, ample remedy may be afforded by the Board.

Judgment and order reversed and cause remanded.

CROCKETT, J., expressed no opinion.