[L. A. No. 1808.  In Bank.—August 19, 1907.]

# H. J. WOOLLACOTT et al., Respondents, v. CORA L. MEEKIN, substituted for D. A. Meekin, Appellant.

STREET WORK—CONTRACT—REFERENCE TO SPECIFICATIONS ON FILE.— Where in all the various proceedings of the city officials for the doing of street work, from and including the resolution of intention to and including the contract for the work, it was provided that the work should be done in accordance with certain described specifications on file in the office of the city clerk, those specifications, by such reference, are expressly made a part of the contract, and were authorized to be included therein by the reference thereto in the anterior proceedings.

ID.—CONDITIONS INCREASING BURDEN ON PROPERTY-OWNER—VOID ASSESSMENT AND BONDS.—A provision in the specifications so referred to, that "All loss or damage arising from the nature of the work to be done under this agreement, or from any unforeseen obstruction or difficulties which may be encountered in the prosecution of the same, . . . shall be sustained by the contractor," is unauthorized by statute, and imposes conditions naturally tending to increase the cost of the work and the burden of the property-owner, and renders void an assessment based and bonds issued thereon.

ID.—PROVISION TO INDEMNIFY CITY FROM LIABILITY.—A further distinct provision in the specifications, that the "contractor shall indemnify and save harmless the city from all suits and actions of every name and description, brought against it for, or on account of, any damages received or sustained by any party or parties, or by or from any of the acts of or anything done by said contractor, his servants or agents in the prosecution of said work," does not detract from the effect of the former provision relating to "damage arising from the nature of the work," and in no degree affected the meaning thereof.

ID.—PRIOR DECISIONS—RULE OF PROPERTY.—The decisions in the cases of *Blochman* v. *Spreckels*, 135 Cal. 662, and *Goldtree* v. *Spreckels*, 135 Cal. 666, holding void assessments for street work based on contracts containing similar provisions, have become a rule of property, upon the faith of which it must be assumed that parties have acted in their dealings in regard to lands.

ID.—MISJOINDER OF PARTIES PLAINTIFF—DEMURRER—WANT OF PREJUDICE.—Assuming that there was a misjoinder of parties plaintiff in an action by twelve persons owning separate lots of land to obtain a decree declaring void such assessment and the bonds issued thereon constituting a lien on their land, still such misjoinder was without prejudice to the defendant, and the overruling of a demurrer to the complaint on that ground will not warrant the reversal of a judgment against the defendant.

ID.—OVERRULING DEMURRER—JUDGMENT AFTER TRIAL ON MERITS.—A judgment after trial upon the merits will not be reversed because the court improperly overruled a demurrer on the ground of misconduct of parties, where it is plain that such misjoinder did not affect any substantial right of the parties.

ID.—INJUNCTIONS AGAINST VOID ASSESSMENT—MORAL OBLIGATION—PAYMENT OF ASSESSMENT.—Where a street assessment is entirely void by reason of the invalidity of the proceeding and contract on which it is based, there is no moral obligation on the part of a lot-owner to pay any part of the assessment as a condition precedent to maintaining an action to enjoin the assessment and bonds issued thereon. The mere fact that the street work called for by the proceedings and contract has been done does not create such a moral obligation.

ID.—CLOUD ON TITLE—INVALIDITY OF ASSESSMENT—NECESSITY OF EVIDENCE TO SHOW.—Such assessment and bonds, notwithstanding their invalidity, would cast a cloud upon the title to the land assessed, which a court of equity will prevent by injunction. The invalidity not being apparent upon an inspection of the assessment, warrant, and diagram, and the bonds, being *prima facie* evidence of the validity of the proceedings, the owners of the land, in any action founded upon a deed issued in proceedings to enforce the lien on the bonds, would be required to offer evidence to defeat a recovery.

APPEAL from a judgment of the Superior Court of Los Angeles County. Waldo M. York, Judge.

The facts are stated in the opinion of the court.

Munson & Barclay, for Appellant.

O. B. Carter, for Respondents.

ANGELLOTTI, J.—This is an action by twelve persons owning separate lots of land in the city of Los Angeles to obtain a decree declaring void and annulling a certain assessment upon their land for street work done on Mott Street in said city and the bonds issued thereon constituting a lien on said land. Judgment was given in favor of plaintiffs, and defendant appeals therefrom.

Upon the question as to the validity of the assessment and bonds it will be necessary to notice but one of the objections of plaintiffs. The street work done consisted of the grading and graveling of a portion of Mott Street, and the construction therein of a cement curb, a redwood curb, a cement sidewalk,

and a cobble-paved gutter. The various proceedings of the city officials, from and including the resolution of intention to and including the contract for the work, provided that the work should be done in accordance with certain described specifications on file in the office of the city clerk of said city. By reference, these specifications were expressly made a part of the contract, and this inclusion of such specifications as a part of the contract was of course authorized by the reference thereto in the anterior proceedings. The specifications so referred to in all the proceedings were separate specifications for the different kinds of work. Each of these specifications contained the following provisions:—

*"All loss or damage arising from the nature of the work to be done under this agreement,* or from any unforeseen obstruction or difficulties which may be encountered in the prosecution of the same, or from the action of the elements, or from any encumbrances on the lines of the work, or for any act or omission on the part of the contractor, or any person or agent employed by him, not authorized by this agreement, *shall be sustained by the contractor."* . . .

"The contractor shall indemnify and save harmless the city of Los Angeles from all suits and actions of every name and description, brought against it for, or on account of any damages received or sustained by any party or parties, or by or from any of the acts of or anything done by said contractor, his servants or agents in the prosecution of said work."

(The italics are ours.) These two provisions were in no way connected, and were apparently separate and independent stipulations.

The question as to the effect on the assessment and bonds of the italicized portion of the first of these provisions is determined by the decision of this court in *Blochman* v. *Spreckels,* 135 Cal. 662, [67 Pac. 1061], and *Goldtree* v. *Spreckels,* 135 Cal. 666, [67 Pac. 1091]. These were actions to restrain a purchaser at sales made on bonds issued on an assessment for street work in the city of Coronado, from applying for a deed, and to quiet the owner's title as against such sales. There was an ordinance of the city providing that the work "shall be done in accordance with the following specifications," which ordinance was held to constitute a part of the contract for the work. That ordinance, after specifying the manner

of doing the work and the materials to be used, provided, among other things, as follows: "All loss or damage arising from the nature of the work to be done under these specifications shall be sustained by the contractor." It will be observed that the only difference between this and the italicized portion of the provision in the case at bar is in the use of the words "these specifications" instead of "this agreement." This difference in verbiage is clearly immaterial. The provisions are substantially the same, and necessarily mean the same thing, unless the connection in which they are used makes a difference. There was also a provision in the cases cited that the contractor "shall hold the city harmless for any and all suits for damages arising out of the construction of said improvements." This court held that while a fair construction of the other provisions might warrant a conclusion that they referred only to damages resulting from the negligence of the contractor in prosecuting the work, the provision as to loss or damage arising from the nature of the work had a broader meaning, and included practically any damage for which the city would be liable which might originate "in the nature of the work to be done." It was held, citing *Brown* v. *Jenks,* 98 Cal. 10, [32 Pac. 701], and *Alameda Macadamizing Co.* v. *Pringle,* 130 Cal. 226, 80 Am. St. Rep. 124, [62 Pac. 394], that such a provision was not only unauthorized by statute, but that it imposed conditions naturally tending to increase the cost of the work and increase the burden of the property-owner, and the judgments giving the owners the relief sought on account of the invalidity of the assessment and bonds were affirmed.

So far as the question as to the proper construction of the provision under discussion is concerned, there is no material difference between the case at bar and the cases of *Blochman* v. *Spreckels,* 135 Cal. 662, [67 Pac. 1061], and *Goldtree* v. *Spreckels,* 135 Cal. 666, [67 Pac. 1091]. The added clauses present in the case at bar in no degree tend to affect the force or meaning of what is clearly a separate and independent provision as to the loss or damage arising from *the nature of the work to be done.* The words "which may be encountered in the prosecution of the same" can be read only as applicable to the clause "or from any unforeseen obstruction or difficulties" immediately preceding. The sec-

ond provision in the case at bar is obviously a separate and distinct provision, having no reference to the provision relating to damages arising from the nature of the work, and in no degree affecting the meaning thereof. No principle of construction would justify the conclusion that this provision was intended to detract from the effect of the former provision and relieve from the burden thereby imposed. There is no merit in the contention that the unauthorized provision was not a "specification" as to the materials to be used, and the manner of doing the work, and therefore was not included in the reference to the specifications made in the preliminary proceedings. Whether or not the provision is in strictness a "specification," it was a part of each of the documents on file referred to, entitled simply "Specifications No. 68, for the construction of graveled streets in the city of Los Angeles," "Specifications No. 54, for the construction of cement curbs in the city of Los Angeles," etc., and was manifestly included in that term, both in the documents entitled "Specifications" and the references thereto, just as it was in the ordinance involved in the Spreckels cases above cited. (See, also, *Brown* v. *Jenks,* 98 Cal. 10, [32 Pac. 701].)

It is apparent that unless the decisions in *Blochman* v. *Spreckels,* 135 Cal. 662, [67 Pac. 1061], and *Goldtree* v. *Spreckels,* 135 Cal. 666, [67 Pac. 1091], are to be overruled, the assessment and bonds here involved must be held void. While those cases were decided in Department, the decisions were practically by the court in Bank, for *Blochman* v. *Spreckels* was decided by Department One, and *Goldtree* v. *Spreckels* was decided on the same day, on the authority of the Blochman case, by Department Two. All of the then justices of this court except the chief justice then gave their adherence to the views there expressed, and applications for a rehearing in Bank were denied. These decisions, given February 28, 1902, constitute a rule of property declared by this court, upon the faith of which we must assume parties have acted in their dealings in regard to lands. The construction given by these decisions to the provision in question was certainly a permissible one. Under these circumstances, we would not feel warranted in overruling such decisions, even if we felt that a different construction might have been given to that provision. It is to be noted in this

CLI Cal.—45

connection that the proceedings for the street work here involved were inaugurated by the city of Los Angeles nearly one year after the decisions above referred to.

A demurrer was interposed to the complaint in the court below and overruled. We have deferred consideration of the points made relative to this ruling, as they can be disposed of more briefly in the light of the knowledge afforded by what we have said as to the merits of the case.

It was urged by the demurrer that there is a misjoinder of parties plaintiff and causes of action, in that several owners of separate lots of land, not claiming under a common source of title, are joined in an action to have the assessment and bonds issued thereunder, constituting liens on the several parcels, declared void. It is unnecessary to consider the argument of learned counsel for plaintiffs in support of this joinder. Assuming for the purposes of this decision that there was a misjoinder, it is apparent that no substantial right of the defendant was affected thereby. Defendant's claim as to each and all of the lots was based entirely upon the validity of the legal proceedings, common to all the lots, leading up to the assessment. Those proceedings were, as we have seen, ineffectual for any purpose and void. No prejudice could possibly result to defendant from having that question determined in a single proceeding maintained by the different owners. On the contrary, in at least one respect, such a course was manifestly to his advantage,—namely, in the matter of costs and attorney's fees. It seems to be thoroughly settled that a judgment after trial upon the merits will not be reversed because the court improperly overruled a demurrer on the ground of misjoinder of parties, where it is plain that such misjoinder did not affect any substantial right of a party. (See *Daly* v. *Ruddell,* 137 Cal. 671, 674, [70 Pac. 784]; *Hirshfeld* v. *Weill,* 121 Cal. 13, 15, [53 Pac. 402]; *Asevado* v. *Orr,* 100 Cal. 293, 300, [34 Pac. 777]; *Reynolds* v. *Lincoln,* 71 Cal. 183, 185, [9 Pac. 176, 12 Pac. 449].) This is but an application of the rule declared by section 475 of the Code of Civil Procedure, that the court must disregard errors and improper rulings not affecting the substantial rights of the parties.

It is urged that the complaint is fatally defective in that there is no allegation that plaintiffs ever offered to pay what

the street improvements were reasonably worth to their lots. It is said that they cannot have the equitable relief sought without doing equity. The equitable maxim thus invoked has no application under the facts shown by the complaint. We have here proceedings for street work, had, presumably, without the consent of the landowner, which were void *ab initio*. They could not serve as a sufficient foundation for any assessment, and for this reason the entire assessment was void. It cannot be held upon the facts shown that there was any moral obligation on the part of the owner to pay any part of such an invalid assessment. The mere fact that the street work called for by the invalid proceedings and contract has been done does not create such a moral obligation.

The case in this respect is the same as *Chase* v. *Treasurer etc.*, 122 Cal. 540, [55 Pac. 414], where it was held in an action by the owner to restrain a sale on such a bond that, as the entire assessment was void and there was no tax to be tendered, no tender was essential to the maintenance of the action. The case here does not fall within the doctrine of the cases cited by defendant, nor within that of the later cases (not cited) of *Ellis* v. *Witmer*, 134 Cal. 249, [66 Pac. 301], and *Couts* v. *Cornell*, 147 Cal. 560, [109 Am. St. Rep. 168, 82 Pac. 194], in the latter of which the application of the maxim relied upon is fully discussed.

There is no merit in the claim that if the assessment and bonds are void they cast no cloud upon the title of plaintiffs. The invalidity is not apparent upon an inspection merely of the assessment, warrant, and diagram, and the bonds, which constitute *prima facie* evidence of the validity of the proceedings, and the owners of the land, in any action founded upon a deed issued in proceedings to enforce the lien of the bonds, would be required to offer evidence to defeat a recovery. The precise point here made was made in *Chase* v. *Treasurer etc.*, 122 Cal. 540, [55 Pac. 414], and decided against the contention of defendant.

There is no other point requiring consideration.

The judgment is affirmed.

Sloss, J., McFarland, J., and Henshaw, J., concurred.

Beatty, C. J., dissented.

SHAW, J., dissenting.—I dissent.

In my opinion the clause of the so-called specifications, upon which the validity of the assessment in the prevailing opinion is based, were not incorporated in the contract and proceedings leading up to the assessment, and formed no part thereof.

In the first place, the reference in the proceedings and in the contract are to things designated therein as "specifications," and the extent of the incorporation of the documents thus designated into those proceedings and contract must be confined to that which constitutes the specifications alone. In *Baltimore etc. R. R. Co.* v. *Stewart,* 79 Md. 487, [29 Atl. 964], speaking of a reference of this character in a building contract, the court says: "The term 'specifications,' as thus used in contracts of this kind, ordinarily means a detailed and particular account of the structure to be built, including the manner of its construction and the materials to be used."

In the second place, the purposes for which the documents called specifications are referred to are limited by the words in which the several references are couched. The proceedings and contract called for five separate classes of work, for each of which separate specifications were referred to. These specifications were evidently general specifications prepared in pursuance of some city ordinance and filed with the clerk, to be made applicable to all subsequent proceedings for the particular classes of work. The work required to be done by the contract and proceedings included the grading and graveling of the street, the construction of a cement curb along part of its course, a redwood curb along another part, a cement sidewalk, and a cobble-paved gutter. As an illustration of the method of reference, the ordinance of intention provided, with respect to grading and graveling, that the street should be "graded and graveled in accordance with the plans and profile in the office of the engineer and specifications for the construction of graveled streets in the city of Los Angeles on file in the office of the city clerk of said city, said specifications being numbered 68," and provided, with respect to curbing, that "a cement curb be constructed . . . in accordance with specifications for constructing cement curbs, on file in the office of the city clerk, said specifications being numbered 54." Similar language was used with

respect to each of the other classes of work. In the notice
for street work, in the ordinance declaring that the work
should be done, in the notice inviting proposals for the work,
and in the notice of award of the contract, the language
above quoted was repeated word for word with respect to
each class of work. In the contract the references with
respect to each particular class of work are again repeated
in the same language as in the resolution of intention and
other documents. It further provides that the contractor
"promises and agrees . . . that he will do and perform,
or cause to be done and performed, in a good and workman-
like manner, under the direction and to the satisfaction of
the said street superintendent, all of the following work
[here follows the descriptions with references as above men-
tioned], . . . according to the specifications on file in the
office of the city clerk of said city, which are known as speci-
fications Nos. 68, 54, 52, 55, and 51, and made part of this
contract."

The specifications provide with great detail the manner in
which the work is to be done and the materials of which it
is to be composed. Each is prefaced by a heading indicat-
ing the purpose for which it was originally adopted by the
council. For instance, that relating to the cement curbs is
as follows: "Specification No. 54. For the construction of
cement curbs in the City of Los Angeles." The others are
in the same language, thus demonstrating that the specifica-
tions were prepared as specifications of construction alone.
There is nothing in the proceedings, or in the contract, ex-
pressing any purpose to refer to the specifications for the
details respecting the rights, obligations, or liabilities of the
contractor or of the city. The two clauses in the documents,
called specifications, which are supposed to create liabilities
against the contractor, and which are declared to have the
effect of making the entire proceedings invalid, have no refer-
ence whatever to the construction of the work required to be
done nor to the materials of which that work is to be com-
posed. It is true that the contract, after referring to the speci-
fications, contains the statement that they are made part of
the contract. This language, by grammatical construction, is
limited in its meaning to the specifications previously referred
to, and manifestly relates solely to the specifications of the

manner of doing the work and the materials to be used therein. It does not have the effect of incorporating into the contract other parts of the document called specifications which have no reference whatever to the work, but only to the rights and liabilities of the parties. In *Short* v. *Van Dyke,* 50 Minn. 286, [52 N. W. 643], the court, referring to the extent to which a separate document was made a part of a contract by a reference thereto, states that "if the reference be made for a particular purpose, expressed in the contract, it becomes a part only for that purpose." In *Neuval* v. *Cowell,* 36 Cal. 650, where other documents were referred to for matter of description, the court said that the other documents were admissible in evidence as part of the agreement to aid the contract in regard to the description, and that "for any other purpose they were foreign to the case." This rule is in strict accordance with the rules by which contracts are to be construed. The document referred to, not being signed by the parties, is incorporated in it only for the purpose of supplementing the contract to the extent to which the contract itself is deficient, and its use must be confined and limited to the purpose for which it is adopted. The following cases are of similar effect: *Riley* v. *Brooklyn,* 46 N. Y. 444; *Hopkins* v. *Rogers,* 11 Tenn. 457.

There is nothing in the cases referred to in the prevailing opinion upon this subject.. In all of those cases it was assumed without argument that the matter contained in the specifications, whether referring to the manner of doing the work or to the materials therefor or not, were a part of the proceedings or contracts in the particular case. It does not appear that the proposition that the references did not include the specifications for the purposes of incorporating the foreign clauses in the contract or proceeding was brought to the attention of the court.

The clauses quoted in the prevailing opinion constitute no part of the contract entered into by the contractor, nor of the proceeding upon which it was based. They did not refer in any respect to the manner of doing the work, the plan by which it was to be constructed, or the quality or character of the materials. It cannot be presumed that they would have any effect whatever upon the various bidders who may have intended to bid upon the work. These clauses are not

in fact incorporated, either in the proceedings referred to or in the contract. They could only become a part thereof by reason of the reference; and as the reference was not made for that purpose, but solely to describe the work and materials, they were entirely foreign to the case, and could have no effect upon the validity of the assessment.

Lorigan, J., concurred in the dissenting opinion of Justice Shaw.

Rehearing denied.