[L. A. No. 3865.   In Bank.—June 21, 1917.]

PASADENA PARK IMPROVEMENT COMPANY (a Corporation), et al., Respondents, v. H. J. LELANDE, County Clerk, etc., et al., Appellants.

Protection District—Nature of.—A protection district organized under the law of 1895 (Stats. 1895, p. 248 et seq.), as amended in 1909 and 1911 (Stats. 1909, p. 807; Stats. 1911, p. 446), authorizing the board of county supervisors to create an assessment district to the end that the property in the district in proportion to benefits shall pay for the improvement and rectification of the channels of innavigable streams and watercourses, and for the prevention of the overflow thereof by improving the same, is not a public corporation.

Id.—Intention to Form District—Sufficiency of Notice.—A notice of intention to form a protection district which declared not only the nature of the work proposed to be done, but also that it was proposed to be done in conformity with the act whose title is set forth in full, is sufficient, although it is not declared in formal and precise terms that it was the intention to form such a district.

Id.—Municipal Corporations—Inclusion of Lands Within District. Lands situated within a municipality may be included in a protection district without doing violence to the rights of the city in municipal affairs provided by the Constitution, since the restraining of floods of innavigable streams may be more than a municipal affair.

Id.—Notice to Property Owners—Mandatory Provisions.—The provisions of sections 15 and 16 of the act as to the giving of notice of hearing to property owners are mandatory and not directory, and the failure to comply therewith before the work is done invalidates the proceedings.

Id.—Estoppel in Pais.—In an action to enjoin a protection district from casting an alleged unlawful assessment lien on the property of the plaintiff, the defendants cannot urge an estoppel *in pais* against the plaintiff based upon their standing by and permitting the work to be done, where the only notice which the complaint declares them charged with is that certain work was to be done, and that the defendant made no special plea or answer setting up the estoppel.

Id.—Injunction—Proper Remedy.—An action to restrain the delivery and filing of an assessment for work in the formation of a protection district will lie, as it is an effort to prevent the cloud of a colorable lien being cast upon plaintiff's property.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Lewis R. Works, Judge.

The facts are stated in the opinion of the court.

A. J. Hill, County Counsel, and C. E. Haas, Deputy County Counsel, for Appellants.

Hartley Shaw, and T. C. Gould, for Respondents.

HENSHAW, J.—Under the law of 1895 (Stats. 1895, p. 248 et seq.), as this law has been amended (Stats. 1909, p. 807; Stats. 1911, p. 446), the board of supervisors of the county of Los Angeles proceeded with the organization of the Rubio Protection District of Los Angeles County, caused work to be done, and an assessment for the payment of this work to be declared. That assessment, under the law, becomes a lien upon the property benefited when the county clerk, as *ex-officio* clerk of the board of supervisors, places the proper documents in the hands of the county tax collector. This action was directed against the county clerk and the tax collector to restrain the one from delivering, the other from receiving and filing, these papers. In its essence, then, the action is to prevent a cloud from being placed upon the titles of plaintiffs' property by a colorable but unlawful assessment lien. A general demurrer was interposed to this complaint, and being overruled, the defendants declined to answer. Judgment passed for plaintiffs accordingly and defendants have appealed. Upon this appeal several questions are formally presented and argued. The determination of all is not necessary to a decision, but as the statute and proceedings here involved are public, it is plainly to the interest of everyone concerned that each should be considered and disposed of.

1. Appellants' contention that protection districts organized under this law are public corporations is wholly untenable. A cursory reading of the act discloses that its whole scope is to authorize the board of county supervisors to create an assessment district to the end that the property in that district in proportion to the benefits it receives shall pay "for the improvement and rectification of the channels of innavigable streams and watercourses, and for the prevention of the overflow thereof by widening, deepening, straightening, and otherwise improving the same." In all essentials is the power conferred by the act like that conferred upon city councils and boards of trustees to create assessment districts for the improvement of streets, etc. And, indeed, this has been declared in the case of reclamation districts where a much more

permanent and continuous organization is contemplated than under the law under consideration and where more powers are granted. As to them this court has said: "The proceeding results in putting a burden upon property against the will of the owners and the requirements as to proceedings of that character cannot be evaded by calling the governmental agency through which the proceeding is conducted a corporation. As remarked in *People* v. *Reclamation District No. 551,* 117 Cal. 114, [48 Pac. 1016], the proceeding greatly resembles those in which property is assessed for local improvements in proportion to benefits, and I see no reason why the same rules as to essential requirements should not apply." (*Reclamation District* v. *Burger,* 122 Cal. 443, [55 Pac. 156].) *Keech* v. *Joplin,* 157 Cal. 3, [106 Pac. 222], upon which appellants rely and from which they quote the language: "The [protection] district is a corporation of a similar character to irrigation districts and reclamation districts," has absolutely no bearing upon the question. The district there under consideration, while also called a protection district, was framed under an entirely different law from the one here under consideration, and all that this court said was that such a protection district so organized is "a corporation of similar character to irrigation districts and reclamation districts." Precisely the character which inheres in irrigation and reclamation districts has often been declared. (*Hensley* v. *Reclamation District,* 121 Cal. 96, [53 Pac. 401]; *People* v. *Levee District,* 131 Cal. 30, [63 Pac. 676].)

2. Sections 1 and 2 of the act, as amended in 1911, provide that a board of supervisors deeming it proper to do such protection work, upon petition of land owners asking for the creation of a protection district and giving the boundaries thereof, "may . . . pass a resolution declaring their intention to form a protection district under this act." (Section 1.) Having done so the clerk of the board, before the date fixed for the hearing of the matter, shall cause to be published a notice, which is to be headed, "Notice of Intention of the Board of Supervisors to Form a Protection District." The resolution of intention adopted by the board was, in its terms, "that it is the intention of the board of supervisors of the county of Los Angeles to improve and rectify the channel of Rubio Canyon Wash, an innavigable stream, etc. . . . in conformity with an act of the legislature of the state of

California entitled an act to provide for the formation of protection districts in the various counties of this state, entitled," etc. (Section 2.) The notice published by the clerk was properly entitled, "Notice of Intention of the Board of Supervisors, to Form a Protection District," and in its recitals and declarations followed with accuracy the notice of intention. While it is unquestionably true that the resolution of intention adopted by the board should have in formal and precise terms stated that board's intention to form a protection district, yet, as the notice of intention declares not only the nature of the work which it was proposed to do, but also that it was proposed to do it in conformity with the protection district act whose title was set forth in full, it necessarily follows that the work could be done only upon the formation of the protection district; wherefore, we hold that notwithstanding its inartificiality, the notice of intention conveyed adequate information to the property owner of what the board of supervisors intended to do, and that that declared intention necessitated the creation of a protection district. And it is concluded upon this point that the irregularity is a minor one in no way prejudicing the rights of the land owners and not sufficient, therefore, to justify a conclusion that the district was illegally formed.

3. In this district was included a large section of the city of Pasadena. Authority for such inclusion is found in the amendment to the act adopted in 1909. (Stats. 1909, p. 809.) Respondents contend that the doing of work of this character within the corporate limits of a municipality is a municipal affair within the meaning of the Constitution reserving to the cities autonomy in all such matters. Further, that the charter of the city of Pasadena having incorporated within itself all general laws of the state upon the subject matter, and thus having made a part of the charter section 2 of the Vrooman Act as amended in 1907 (Stats. 1907, p. 126), and as that provides a complete scheme for the doing of work of this character within the corporate limits of the city, the inclusion within the protection district of these lands within the municipality was violative of the municipality's reserved right under the Constitution. And finally herein, it is pointed out that the charter provisions were in full force at the time when the amendment of the protection district act authorizing the inclusion of lands within a municipality became

law. Respondents' position here is unassailable whenever it is made to appear in any given instance that the affair is strictly municipal. But in this, as in many divers things, cases may arise where the matter is not simply and without complication a municipal affair, but where partaking of the charateristics of a municipal affair, in that the municipality is interested therein, it may essentially be much more than merely a municipal affair. Illustrative of this is the recent case of *Civic Center Assn.* v. *Railroad Commission, ante,* p. 441, [166 Pac. 351]. Thus it is quite apparent that a municipality, and a municipality alone, may be injuriously affected by the unrestrained floods of some innavigable stream. Upon the other hand, the injurious effects may reach far beyond the boundaries of the municipality and even of the county, and in the latter class of cases it is more than a municipal affair. It is an affair in which the state becomes interested, and it does no violence to the reserved rights of municipalities to say that in such cases the state directly or through its mandatories may take steps to correct the evil, and in so doing compel lands within municipalities to bear their due proportion of the burden. As this appeal presents but the complaint alone, it is unnecessary to say more than this, for the point is not made in the complaint nor urged in argument that the work proposed to be done lay wholly within the corporate boundaries of the city of Pasadena.

4. Respondents next contend that the work was prematurely done without warrant of law, and that therefore no valid assessment in payment for it can be levied. The consideration of this necessitates setting forth at some length the provisions of the statute bearing on the question. They are sections 6, 15, and 16 of the act as amended in 1911. Section 6, so far as necessary to this consideration, declares as follows:

"As soon as said district is formed, the board shall cause a survey of the contemplated improvements to be made, or adopt a survey already made, and shall also cause a map of such survey, and plans and specifications showing such improvements in detail, to be prepared, and *they shall adopt such survey, maps, plans and specifications, and thereafter all such improvements shall be made in accordance with the survey, maps, plans and specifications so adopted;* provided, that at any time after the adoption of said survey, map, plans and specifications, and before the commissioner's report of assess-

ment of benefits and award of damages has been finally adopted and confirmed by the board, said board may rescind their action in adopting said survey, map, plans and specifications, and may modify the same or adopt others in place thereof, in which case a new assessment shall be made, or may, by a four-fifths' vote of the members thereof, abandon the contemplated improvement and dissolve the said protection district, in which case the expenses already incurred in behalf of such district shall be a county charge.'' The italics are employed the better to call attention to appellants' construction of the statute.

Section 15 provides: ''The report of such commissioners and the plat accompanying it shall be filed with the clerk of the board of supervisors, and said board shall thereupon fix a time for the hearing thereof, which shall not be less than four weeks after the filing thereof, and thereupon the clerk of said board shall give notice of such hearing by publication for at least three weeks in a newspaper of general circulation published and circulated in the said district, if such there be, or if there is no such newspaper, then in some newspaper of general circulation published in one of the counties in which said district is situated, said newspaper to be designated by the board.'' Next follows the form of notice which is required to contain a declaration in terms as follows: ''All persons interested are hereby required to show cause, if any they have, at the time fixed for said hearing, why such report should not be adopted and confirmed by said board of supervisors, and the improvements therein referred to constructed. All objections shall be in writing, signed by the person objecting, and filed with the clerk of said board at or before the time above mentioned.''

Section 16 is in the following language:

''Any person interested may file with the clerk of said board, at or before the time fixed for the hearing, a written objection to said report or any part thereof, or to the survey, map, plans, or specifications for the proposed improvements, or to the making of such proposed improvements. At the time fixed for such hearing or at any other time to which the hearing may be adjourned, the board of supervisors shall hear all objections so filed, if any, and pass upon the same, and shall proceed to pass upon such report, and may confirm, correct or modify the same, or may take such action in regard

to the survey, map, plans and specifications as is authorized
by section 6 of this act, or may order the commissioners to
make a new assessment, report and plat, which shall be filed,
heard and acted upon in the same manner and on like notice,
as in the case of an original report. The action of the board
upon the report and objections thereto, and upon the survey,
map, plans and specifications, shall be final and conclusive as
to all matters which they might have remedied or avoided;
and no assessment shall be set aside, except upon such hearing,
for any error, defect or informality therein or in the pro-
ceedings prior thereto, where the district has been legally
formed and notice of the hearing of the report has been given
as herein prescribed. When such report has been adopted
and confirmed, said board may by order entered upon its
minutes discharge said commissioners, and their authority
shall thereupon cease.''

The facts alleged in the complaint are that the work was
all done prior to the making of the report of the commis-
sioners and prior to the giving of any notice for a hearing
upon those questions as to which the statute says the prop-
erty owners may be heard. In support of the legality of
the action of the board of supervisors in this respect appel-
lants advance several propositions. (a) They contend that
there is a conflict between the provisions of section 6 and
sections 15 and 16, and that the portion of section 6 above
italicized is controlling. Under no possible view can this be
true, first, because the sections are to be read together and
harmonized if possible, and such harmonization is quite pos-
sible. So harmonized and considering that the declaration
in section 6 to the effect that the board of supervisors shall
adopt such survey, maps, etc., is immediately followed by a
most important limiting proviso, it is plain that section 6
contemplates merely a tentative and not a final adoption, an
adoption amounting to nothing more than the supervisors'
approval of the plans, etc.; and, second, because the subse-
quent sections 15 and 16 deal expressly and with great par-
ticularity with this precise question, and, being a later ex-
pression, control the general language previously used. (b)
Appellants contend that the provisions of sections 15 and 16
are directory merely, and that a failure to comply at all or
a failure to comply with them before the work is done, the
provisions not being mandatory, does not invalidate the pro-

ceedings, herein supporting their contention by the following
from 1 Elliott's Roads and Streets, section 614: "Remon-
strance by Property Owners. Property owners whose prop-
erty is assessed for the improvement must have notice and an
opportunity to be heard at some stage of the proceedings;
but where the question of the necessity or advisability of the
improvement is left to the discretion of the local authorities
it is not necessary that they should be given the right to
remonstrate or to be heard upon that question, and it has been
held that the failure to give them notice of the preliminary
resolution of necessity and an. opportunity to remonstrate and
be heard upon that question does not render the proceedings
absolutely void, although the statute provides for a remon-
strance and a hearing thereon." But this quotation, as well
as another from Dillon (4 Municipal Corporations, p. 2363),
upon which appellants rely, have to do with the general
subject of the constitutionality or unconstitutionality of the
acts themselves, and have reference to the requisites which
such acts must contain before they can be declared consti-
tutional. The learned authors are not there discussing,
though they do elsewhere, the effect of noncompliance with
the rights given to property owners by the acts themselves,
and that is the only question here before us. Thus, the quota-
tion above given from Elliott is supported by the citation of
two cases from Indiana, *Barber etc. Paving Co.* v. *Egerton*,
125 Ind. 455, [25 N. E. 436]; *Bozarth* v. *McGillicuddy*, 19
Ind. App. 26, [47 N. E. 397, 48 N. E. 1042], but in his foot-
note Mr. Elliott points out that by the vast weight of author-
ity the principle and the rulings are to the contrary, and
at volume 1, section 615, he says, in terms: "The right to file
an effective remonstrance, as well as the effect it shall have,
depends upon the governing statute." And again, in section
666, he says: "It has been held that provisions of a statute
delegating the authority to levy local taxes or assessments
may, under the general rule upon the subject of mandatory
and directory statutes, be considered as directory and not
mandatory. The doctrine that the courts have a right to dis-
regard the words of a statute upon the ground that they are
merely directory is, at best, not easily defended; at all events,
it is one that should be cautiously applied to cases where
authority to impose a special burden upon the citizen is
granted by the legislature. In such cases it is difficult, if not

impossible, for the courts to determine what the legislature deemed important, and what immaterial, and the true course would seem to be to regard all the provisions as mandatory.'' We have gone into the matter with this particularity only that it might not be thought that appellants' argument has been overlooked, but in truth our own decisions are convincing and conclusive upon the question, and here preliminarily it may not be amiss to remark that no court of last resort before which has come questions growing out of benefit assessments has failed to note and deplore the grave injustice and wrong which are frequently perpetrated upon the property owners and which the courts themselves regret their inability to redress. (*Reclamation District* v. *Birks,* 159 Cal. 233, [113 Pac. 170] ; *Spring St. Co.* v. *Los Angeles,* 170 Cal. 24, [148 Pac. 217].)   It is true that the rule that tax proceedings are *in invitum* and that the methods prescribed shall be strictly followed has latterly been much relaxed, in some instances by force of statutes, in others by judicial interpretation.   And this is so because anciently taxes were most unjustly and oppressively levied without regard to the equitable considerations of reasonableness and uniformity.   It was to protect the property owner against onerous, inequitable, and unjust burdens that courts went to the extreme of invalidating assessments or levies for the lack of a dotted ''i'' or a crossed ''t,'' a decimal point or prefixed dollar-mark.   But as progressively the taxing power has aimed at equality, reasonableness, uniformity, and justice, concurrently have the stringent rules been relaxed, and courts generally, and this court in particular, in cases of general taxation, will wherever possible refuse relief to a complaining taxpayer unless he has done or tendered equity, has paid or offered to pay the amount fairly chargeable against him as a tax.   But this relaxation has never reached the point even when the question is one of general taxation, far less when it is one of special taxation for assumed benefits, of declaring that any provision which the law declares for the protection of the property owner the authorities may deprive him of by calling the provision directory merely.   While our authorities to this effect are numerous and some will be cited, we will content ourselves with quoting a late declaration of this court in *Chase* v. *Treasurer,* 122 Cal. 540, [55 Pac. 414].   That was an action to enjoin the sale of plaintiff's property on a street assessment bond, and this

court said: "In proceedings where the property of a citizen is to be taken, every requirement of the statute having the least resemblance of benefit to the owner must be complied with. No one can doubt that the purpose of notice is to give the owner of property an opportunity to object to the proposed work and that notice is for his benefit and is of benefit. Here the act required the council to designate the newspaper and the ordinance directed the publication to be made in that paper. It was, we think, mandatory upon the council to designate the paper, and being so, a publication in some paper not designated would not be a compliance with the statute and would in effect be no publication." And to the same effect are *Haskell* v. *Bartlett*, 34 Cal. 281; *Dougherty* v. *Hitchcock*, 35 Cal. 512; *Hewes* v. *Reis*, 40 Cal. 263; *Burke* v. *Turney*, 54 Cal. 486; *Mulligan* v. *Smith*, 59 Cal. 206; *Brock* v. *Luning*, 89 Cal. 317, [26 Pac. 972] ; *Manning* v. *Den*, 90 Cal. 614, [27 Pac. 435] ; *Warren* v. *Chandos*, 115 Cal. 382, [47 Pac. 132] ; *California Improvement Co.* v. *Quinchard*, 119 Cal. 87, [51 Pac. 24] ; *Kelso* v. *Cole*, 121 Cal. 121, [53 Pac. 353] ; *San Diego Investment Co.* v. *Shaw*, 129 Cal. 273, [61 Pac. 1082] ; *Lent* v. *Tillson*, 72 Cal. 412, [14 Pac. 71], upon which appellants place reliance, is no wise in point, for the reason above given. Its consideration is directed to the constitutionality of the act in not providing for due process of law. It did not deal with the question of the noncompliance with statutory requirements for the giving of notices.

After consideration of these legal principles coming next to a contemplation of the statute itself, it must at once be apparent that to the property owner the notice with provision for a hearing is of very real significance. It is his one opportunity to correct errors, suggest improvements, and secure modifications of the plans. More than this, it gives him an opportunity by successful argument to secure a total abandonment of the contemplated improvements and the dissolution of the protection district. To say that in being denied these rights he is not injured because he may come before the board and protest after the work is done and his cause thus prejudged without a hearing is preposterous. As well might it be argued that a man under sentence of death and denied his right of appeal is not injured by his execution because perhaps his personal representatives might thereafter be allowed to prosecute that appeal and vindicate his memory.

5. Appellants urge an estoppel *in pais* against respondents as having stood by and without taking proper action allowed the improvement to be completed. Indisputably unless the facts establishing such an estoppel appear upon the face of the complaint itself the defense is not available to appellants without special plea by answer. (*Burk* v. *City of Santa Cruz,* 163 Cal. 807, [127 Pac. 154].) No such facts appear in the complaint. The only notice which the complaint declares and the only proceedings with knowledge of which plaintiffs are charged amount to no more than information that certain work was to be done. This work was the "construction of a conduit, pipe or gutters to carry off the storm waters from the Rubio Canyon Wash." This did not charge these plaintiffs with knowledge of the nature or place of construction. Sections 2643a, 4042, and 4043 of the Political Code provide for the doing of precisely the work above mentioned by the supervisors without the formation of an assessment district, paying therefor when necessary by a special tax. There is nothing in the complaint that charges the plaintiffs with knowledge that the work was not so done. In brief, this defense was only open to the appellants by plea, and they refused to avail themselves of their opportunity. Certainly, no estoppel is shown by the complaint. (*Hewes* v. *Reis,* 40 Cal. 255; *Manning* v. *Den,* 90 Cal. 610, [27 Pac. 435]; *Heft* v. *Payne,* 97 Cal. 108, [31 Pac. 844]; *Warren* v. *Chandos,* 115 Cal. 382, [47 Pac. 132]; *Chase* v. *Treasurer,* 122 Cal. 540, [55 Pac. 414].)

6. There was no misjoinder of parties plaintiff. (Code Civ. Proc., sec. 378; *Churchill* v. *Lauer,* 84 Cal. 233, [24 Pac. 107]; *Toomey* v. *Knobloch,* 8 Cal. App. 585, [97 Pac. 529]; *Woollacott* v. *Meekin,* 151 Cal. 706, [91 Pac. 612].)

7. The argument that this is not a proper case for an injunction calls for no detailed consideration. It is an effort to prevent the cloud of a colorable lien being cast upon the plaintiffs' property. It is not such a case as *Crocker* v. *Scott,* 149 Cal. 575, [87 Pac. 102], where the lien was in fact imposed and an injunction was denied because of this circumstance, coupled with the additional one that it would work a grave interference with the orderly collection of the general revenues of the state. To the contrary, this case is in principle like the case of *Southwick* v. *Santa Barbara,* 158 Cal. 14, [109 Pac. 610], *Chase* v. *Treasurer, supra, Woollacott* v. *Meekin,*

*supra,* and *Toomey* v. *Knobloch, supra,* where injunctions were granted.

The judgment appealed from is therefore affirmed.

Melvin, J., Sloss, J., Lorigan, J., and Angellotti, C. J., concurred.