[L. A. No. 2561.    Department One.—June 11, 1910.]

## FRANKLIN B. SOUTHWICK et al., Appellants, v. CITY OF SANTA BARBARA et al., Respondents.

STREET IMPROVEMENTS — "LOCAL IMPROVEMENT ACT" — INCLUSION OF WIDELY SEPARATED SECTIONS IN SINGLE DISTRICT.—The inclusion of two widely separated sections of the city in one assessment district, all of the property of which is to be specially assessed to pay the aggregate cost of all the improvements proposed, is not authorized by the Local Improvement Act of 1901, especially where it appears that the work to be done on one of such sections is different from that to be done on the other, and that the proposed improvements in one section have no connection with those of the other section and can receive no special benefit therefrom.

ID.—AUTHORITY TO INCLUDE ONE OR MORE STREETS IN SAME PROCEEDING NOT AN AUTHORITY FOR SEPARATED SECTIONS.—It was never designed by the authorization to "include one or more streets in the same proceeding" to empower the legislative body of the municipality to so include in one proceeding street work in widely separated sections of a city, as to result in imposing a portion of the cost of improving a street in one of such sections on property not benefited thereby, situated in the other section, simply because it is benefited to some extent by an improvement upon another street in the section in which it is located.  The authority to include one or more streets in the same proceeding contemplates only one district including such streets, as a single district to be specially benefited thereby.

ID.—RESOLUTION OF INTENTION COVERING SEPARATE DISTRICTS—DUTY OF ENGINEER.—If the resolution of intention should contemplate streets in widely separated sections of the city, it is the duty of the engineer, when he finds that the work to be done embraces in the matter of special benefit separate and distinct districts, to make a separate report as to each of such districts, so that the expense of the work in any one district may be apportioned to and borne by the property of that district alone.

ID.—OBJECTION TO UNAUTHORIZED DISTRICT AVAILABLE WITHOUT APPEAL. —The objection to an unauthorized district containing widely separated sections may be urged by property-owners to enjoin an illegal assessment based thereon, notwithstanding their failure to make objection to the legislative body.

ID.—AUTHORIZED REPORT OF ENGINEER ESSENTIAL TO JURISDICTION.—
An authorized report of the engineer made pursuant to section 4
of the Local Improvement Act is essential to the jurisdiction of the
legislative body to proceed on the matter of the assessment, and
where the engineer's report is defective in matter of substance, by
embodying widely separated sections of the city in one district with-
out authority of law, the inclusion thereof in one assessment district
may be enjoined.

ID.—DEFINITE DESCRIPTION IN ENGINEER'S REPORT AND SUBSEQUENT PRO-
CEEDINGS—BOUNDARIES AND AREA.—The description in the engineer's
report and in the subsequent proceedings of the exterior boundaries
of the district which is to be benefited, and is to be specially
assessed, should be as certain and definite as it can be made. All
of the matters required to be stated in the engineer's report should
be stated therein, including the *"dimensions"* and *"area"* shown on
the map.

ID.—PART OF COST BORNE BY CITY—REMAINDER ONLY ASSESSABLE.—If
it is determined by the city that any part of the cost of a projected
improvement is to be paid out of the treasury of the municipality,
the amount so to be paid should be deducted from the estimated
cost, and the remainder only assessed against the property of the
district specially benefited.

APPEAL from a judgment of the Superior Court of Santa
Barbara County. Frank R. Willis, Judge presiding.

The facts are stated in the opinion of the court.

J. L. Barker, for Appellants.

W. P. Butcher, for Respondents.

ANGELLOTTI, J.—This case involves the question of the
validity of certain proceedings for the doing of street work in
the city of Santa Barbara had under the act of February 26,
1901, known as "The Local Improvement Act of 1901" (Stats.
1901, p. 34). It is an action by certain property-owners as-
sessed for the contemplated street improvements to enjoin the
further carrying on of the proceedings on the ground that
because of alleged failures to comply with certain provisions
of the statute, the assessment made for the improvement is
void. A portion of plaintiffs' complaint was stricken out on
motion of defendants, and a demurrer to the complaint was
sustained. Judgment was thereupon given for defendants,
and plaintiffs appeal from such judgment.

The general scheme in the act involved is as follows: The legislative body of the city or town may include in one proceeding thereunder practically any of the street work described in the general street law known as the Vrooman Act, to be done upon "one or more streets." Before ordering any work done it must, by resolution, refer the proposed work to the city engineer, instructing him to make a report in writing containing his recommendations as to the best method of doing the work. The engineer is required to file such report, and annex to it certain exhibits, showing, among other things, a description of the exterior boundaries of the district which will be benefited by the proposed improvement and should be specially assessed to pay the cost thereof, an estimate of the expense of said improvement, a map showing the district above referred to and also the subdivisions of the property therein as ascertained by the engineer, each of which subdivisions shall be given on said map a separate number in red ink, a list referring to said subdivisions by said numbers and showing the names of the owners if known, the valuation of each as the same appears on the last assessment-roll or as estimated by the engineer, also "the dimensions, areas, and his estimates of th benefits which the respective parcels will receive from said improvement." "After the report" has been filed, the legislative body shall consider the same and "have the power" to adopt it as filed or as modified by it and "levy the assessment accordingly." The legislative body must by the same resolution give all parties interested an opportunity to be heard by fixing a day, hour, and place "when and where all persons may appear before the legislative body and show cause . . . why said improvement provided for in said resolution should not be carried out in accordance therewith," which shall be at least thirty days after the passage of the resolution, and shall also give therein a description of the exterior boundaries of the district declared by it to be benefited by the improvement and assessed therefor. Notice of this resolution must be posted and published, which notice shall contain, among other things "a description of the district covered by the resolution by the exterior boundaries thereof . . . in bold face type." Any person objecting must file his verified written objections, stating the ground thereof. A hearing must be had thereon, at the close of which the legislative body shall pass a resolution set-

ting aside, modifying, or confirming the previous resolution. Where the same is confirmed or modified, the lien of the assessment provided for therein shall immediately become attached to the respective parcels of land in accord with the confirmed or modified resolution. "Any action to contest an assessment" must be commenced within thirty days thereafter. Upon the expiration of said thirty days if no such action has been brought, or upon the determination of such actions as are so brought, the clerk shall transmit the map and list, as modified by the legislative body, to the tax-collector, who shall proceed to collect the amounts shown due thereby. The act makes elaborate provision for the collection of such amounts, providing for the sale of the property for non-payment or the taking of installment agreements from the owners, which agreements include a waiver of all objections to the proceedings, and against which installment agreements bonds may be issued and sold. When, as a result of these proceedings, the funds for the work are actually in the hands of the treasurer, contracts for the work may be let. If the first assessment prove insufficient a second may be made, and if an assessment shall realize a larger sum than is necessary, the excess shall be refunded *pro rata,* to the parties by whom it was paid. It appears to be conceded that this action was commenced within thirty days after the making of the order disposing of objections filed and confirming the assessment as modified by the legislative body, and it is in effect an action to contest the assessment.

In plaintiffs' brief several particulars are referred to as alleged in the complaint wherein the proceedings are claimed to have been at variance with the requirements of the act to an extent sufficient to require the whole proceedings to be held invalid.

It appears from the complaint that the engineer reported as "the district to be benefited by said improvement," which improvement consisted of grading, curbing, guttering, and paving, two separate and distinct sections of the city that are not contiguous, and that are alleged to be separated at their nearest points to one another by nearly one half of a mile, giving the exterior boundaries of each section. It is further alleged that the portions of some of the streets on which the work is to be done are wholly within one of these sections, and the remainder wholly within the other section. It is further alleged

CLVIII Cal.—2

that these two sections have no community of interests, and that the real property of either one of said sections will not receive any benefit from street improvement made in the other. The city council adopted this part of the engineer's report, apportioning the total cost of the proposed work on *all* the streets as estimated by him, $104,793.29, to the real property in the two sections. In this connection it is further to be noted that the complaint shows that the character and cost of work to be done on some of the streets in one section was different from that in the other section. For instance, there was to be grading on some streets and none on others, and the cost of grading on different streets was different, and there was to be asphalt paving on some of the streets and petrolithic paving at less than half the cost on others.

We are satisfied that the inclusion of these two widely separated sections of the city in one assessment district, all the property of which is to be specially assessed to pay the aggregate cost of all the improvements proposed, was not authorized by the act.

It was never designed by the authorization to "include one or more streets in the same proceeding" to empower the legislative body to so include in one proceeding street work in widely separated sections of a city as to result in imposing a portion of the cost of improving a street in one of such sections on property not benefited thereby, situated in the other section, simply because it is benefited to some extent by an improvement made upon another street in the section in which it is located. That this might well be the result under the procedure here adopted is very clear. It is manifest in view of the allegations of the complaint and the engineer's report, which is set out in full in the complaint, that the projected improvements in one section have no connection with those in the other section, and that the property in the other section can receive no special benefit therefrom. The proposed improvements in one section are a matter of no special concern whatever to the property-owners in the other section. Yet the cost of *all* the improvements is necessarily taken into consideration in fixing the amount of assessment on each lot, that aggregate cost being apportioned to each lot in one section in proportion to the special benefit it will derive from the improvements to be made in that section alone. The cost of the latter improvements

should alone be considered with reference to such property. The projected improvement may be much more costly in one section than it is in the other, while the benefit to the property in each section from the improvements made therein may be as great in the one section as in the other. In such a case the cost of all being apportioned according to the benefit to each parcel of land in both sections would necessarily result in imposing a portion of the expense of the more costly work upon the property of the section in which it is not located. If the first assessment prove insufficient to complete the whole improvement, a second may be made in the same manner as nearly as may be (sec. 20). Such insufficiency may be due wholly to a greater expense in doing the work in one of the sections, and yet the property of the other section will be called upon to assist in supplying the deficiency, the proportion of benefit from the whole improvement having already been established by the proceedings on the first assessment. If a larger sum is realized from an assessment than is necessary for the whole improvement, the excess is to be refunded "pro rata, to the parties by whom it was paid" (sec. 21). Such an excess may be entirely due to an over-estimate as to the improvements in one only of the sections. In such event, unless the property-owners in the other section have already paid something on account of the work in the former section as to which the over-estimate occurred they should not, of course, participate in the return. We mention these things to show the impracticability under the act before us of uniting in one proceeding and assessment improvements in two widely separated sections of a city, where the property of one section derives no special benefit from the improvement in the other section, in a manner that would place the cost of the improvement upon the property in proportion to the special benefit accruing from the improvement. To our minds no such construction was contemplated by the act. Learned counsel for the city necessarily relies on the provision in subdivision 1 of section 4, calling for a description of the work in the engineer's report, that "said work may include one or more streets in the same proceeding." In view of the other provisions of the act we think the provision referred to means no more than this: It was contemplated that some particular improvement, constituting what might reasonably be called an entirety but including more than one street, might

be of special benefit, as distinguished from the general benefit to all the property of the city, to property in its immediate vicinity, and that it would be proper to authorize the formation of an assessment district including all such property. Hence the authorization to include more than one street in the same proceeding. But clearly there is to be but one "district" in any proceeding, and as we understand the word "district" in the connection in which it is used, it means a single portion of the territory of the city set off as being specially benefited by a street improvement to be made therein. Learned counsel relies somewhat on the fact that it has been held that in the case of improvements under the Vrooman Act, work on different streets may be included in one resolution of intention. But it was declared in the first opinion so holding, that the work on each street was a distinct and several improvement, and that its distinct and several character is to be observed in the subsequent proceedings. (*Bates* v. *Twist*, 138 Cal. 52, 54, [70 Pac. 1023].) It may be that under the act before us various streets in widely separated sections of the city may be included in the preliminary resolution referring the work to the engineer for consideration, but it seems clear to us that if he finds that the work to be done embraces in the matter of special benefit separate and distinct districts, he must make a separate report as to each of such districts, so that the expense of the work in any one district may be apportioned to and borne by the property of that district alone.

We have no doubt that the objection we have considered is available to the plaintiffs in this action, notwithstanding their failure to make objection before the legislative body. Such a report by the engineer as is contemplated by section 4 of the act is essential to the jurisdiction of the legislative body to proceed in the matter of levying the assessment. By the express provisions of sections 3 and 5, it is only "after" such a report has been filed that such body "have the power" to proceed. A substantial compliance, at least, with the provisions of section 4 in the matter of such report is certainly essential to jurisdiction. In view of what we have heretofore said, the report here was defective in matter of substance.

Other points are made against these proceedings which may easily be obviated in any new proceeding and hence the question of their validity need not be determined on this appeal.

It is proper to say, however, that the description in the engineer's report and the subsequent proceedings of the exterior boundaries of the district which will be benefited and is to be specially assessed should be as certain and definite as it can be made. It is likewise proper to say that the law requires the engineer to state in the list provided for by subdivision 6 of section 4, the "dimensions," and "area" of the various subdivisions shown on the map provided for by subdivision 5 of the same section. These are matters expressly required to be contained in the report, and it may well be doubted whether we could hold that any of such requirements is without "semblance of benefit to the owner." (See *Dehail* v. *Morford*, 95 Cal. 460, [30 Pac. 593].) It is further proper to say that if it is determined by the city that any part of the cost of a projected street improvement is to be paid out of the treasury of the municipality the amount so to be paid should be deducted from the estimated cost and the remainder only assessed against the property of the district specially benefited.

The judgment is reversed and the cause remanded with directions to the trial court to overrule the demurrer of defendants herein.

Shaw, J., and Sloss, J., concurred.

Hearing in Bank denied.