[Sac. No. 1697.   In Bank.—May 26, 1911.]

## WILLIAM R. McQUIDDY et al., Respondents, v. WORSWICK STREET PAVING COMPANY et al., Appellants.

Street Assessment—Specifications—Provision Imposing Liability on Contractor during Progress of Work.—An assessment for a street improvement constructed under the act of 1893 and the amendments thereto of 1899 (Stats. 1893, p. 33; 1899, p. 40) is not invalidated by reason of the inclusion in the specifications for the work of a provision which, after stating that the work should be done in accordance with such specifications, required, under a subheading of "Safe Guards," that "the contractor shall use all necessary precautions to prevent accidents to persons and property by providing sufficient fences, guards, barriers, temporary bridges, lights, etc., and shall be responsible for all loss, damage or injury to persons, property or the work due to the nature of the work or the action of the elements."

Id.—Damages during Progress of Work.—Properly construed, such provision refers exclusively to damages arising during the progress of

the work, and not to damages arising subsequently thereto caused by the nature of the work when completed.

Id.—Contractor Liable for Own Negligence.—A provision in a contract for a street improvement which makes the contractor responsible for the consequences of his own negligence or carelessness in the construction of the improvement contracted for is not improper or fatal to the validity of the street assessment.

Id.—Reference to General Ordinance for Specifications.—The specifications for a contemplated street improvement need not be set out at length in the resolution of intention or in the resolution ordering the work to be done; it is sufficient if they are referred to therein by reference to the specifications on file in the clerk's office and to an ordinance prescribing the specifications.

Id.—Provision for Adding to or Deducting from Work.—Where an ordinance of a municipality establishes general specifications for street improvements to be done either under the Vrooman Act or under street improvement acts, resulting in assessments upon private property, or by the city under direct contract to be paid for out of the general funds, a provision therein to the effect that no work or materials for which a contract has been made under such specifications shall be changed or omitted or added to, except upon order of the board of trustees, and that the price to be added to or deducted from the contract price shall be stated in the order, does not give the city trustees any power to change the contracts for street work made under assessment acts.

Id.—Furnishing Apparatus Owned by City to Contractor.—A provision in such specifications, that "any materials, apparatus, or plant owned by the city may be furnished, loaned, or hired to the contractor, upon such terms as may be stipulated in the contract therefor," does not invalidate the assessment proceeding, in that it would allow unfair competition between bidders.

Id.—Employment of Competent Men by Contractor.—A requirement in such specifications that the contractor shall employ no one but competent and faithful laborers, and that he shall dismiss any employee who fails to perform the work satisfactorily to the city authorities, is not improper.

Id.—Composition of Street Pavement—Use of Stone Dust "as Required."—A provision in the specifications that in the composition of the wearing surface of the street the contractor shall use stone dust "as required," is to be construed in connection with other provisions requiring the component materials to be mixed in such proportions that the mixture will pass a designated test. It does not mean that so much shall be used as may be required by the city engineer or the city trustees.

APPEAL from an order of the Superior Court of Kings County refusing a new trial. John G. Covert, Judge,

The facts are stated in the opinion of the court.

Charles G. Lamberson, Frank Lamberson, H. P. Brown, Everts & Ewing, and Gray & Cooper, for Appellants.

Dixon L. Phillips, and W. R. McQuiddy, for Respondents.

SHAW, J.—This is an appeal by the defendants from an order denying their motion for a new trial. The action was one to quiet title to two lots in the city of Hanford. The defendants claim a lien on the property by virtue of their ownership of certain bonds for street improvements issued under the provisions of the act of 1893 and amendments of 1899 thereto, entitled "An act to provide a system of street improvement bonds . . . etc." (Stats. 1893, p. 33; Stats. 1899, p. 40.) The court below held that the proceedings leading up to the issuance of the bonds were void, and gave a judgment for the plaintiffs, declaring that the defendants had no interest in the land.

The resolution of intention, and the resolution ordering the work done, described the proposed improvement as follows: "That Eighth Street . . . be paved with asphaltic pavement on an asphalt concrete foundation, and curbed with granite curbing, all in accordance with the plans and specifications on file in the office of the city clerk of the city of Hanford . . ." The specifications referred to were those contained in a general ordinance (No. 131) prescribing specifications for the construction of the several varieties of improvements of streets and sidewalks in the city of Hanford, whether paved by means of special assessments upon private property, or out of the general funds of the city.

The principal objection to the validity of the proceedings upon which the bonds were issued is based upon the provisions of section 6 of the ordinance. Section 1, which is introductory in character and is given under the sub-head "Declaration," provides that "all work or materials required in grading, paving or improving any street . . . shall be performed, or furnished in accordance with these specifications and plans." Section 6 is as follows:

"SAFEGUARDS."

"The contractor shall use all necessary precautions to pre-

vent accidents to persons and property by providing sufficient fences, guards, barriers, temporary bridges, lights, etc., and shall be responsible for all loss, damage or injury to persons, property or the work due to the nature of the work or the action of the elements."

It is contended that this specification is identical in effect with those declared to be fatal to the validity of such assessments by the decisions in *Blochman* v. *Spreckels,* 135 Cal. 662, [57 L. R. A. 213, 67 Pac. 1061]; *Goldtree* v. *Spreckels,* 135 Cal. 666, [67 Pac. 1091]; *Woollacott* v. *Meekin,* 151 Cal. 701, [91 Pac. 612]; *Hatch* v. *Nevills,* ·152 Cal. 16, [95 Pac. 43]; *Van Loenen* v. *Gillespie,* 152 Cal. 222, [96 Pac. 87]; *Stansbury* v. *Poindexter,* 154 Cal. 709, [129 Am. St. Rep. 190, 99 Pac. 182], and *True* v. *Stansbury,* 155 Cal. 534, [102 Pac. 263].

We cannot agree with this contention. The portion of the specification which was held fatal to the assessment in *Blochman* v. *Spreckels,* 135 Cal. 662, [57 L. R. A. 213, 67 Pac 1061], was as follows: "All loss or damage arising from the nature of the work to be done under these specifications shall be sustained by the contractor." It was said that the other specifications might reasonably be held to refer exclusively to damage occurring from acts done in the progress of the work and to make the contractor responsible merely for damages caused by his negligence in prosecuting the work. But as to the clause above quoted, the court said that it had a "broader meaning and looked to damage which might arise out of and subsequent to the *completed work*—practically any damage for which the city would be liable which might originate in 'the nature of the work to be done.' " It is perfectly clear from a reading of the opinion that if this meaning had not been attributed to the clause quoted, the assessment there considered would not have been held to have been invalidated by the specification in question. The specifications involved in the other cases above cited were each and all held to be the same, in effect, as that considered in the Blochman case. We think the specification here under consideration contains language which, when taken in connection with the introductory clause and considered in the light of the purpose for which such specifications are made, must be construed to refer exclusively to damages arising during the progress of the work and not to damages arising subsequently thereto caused by the nature of

the work when completed. The introduction to the ordinance prescribing the specifications and plans declares in effect that they are adopted as a guide for the performance of the work. There is nothing in the ordinance anywhere which indicates any intention to provide anything with respect to liabilities accruing after the work is performed in the way of damages to property or persons arising from the nature or character of the pavement when completed. The sub-head of specification No. 6 consists of the word "Safeguards." This of itself indicates an intention to provide for the safety of persons who may be upon the streets while the work of paving them is in progress. It is a well-settled proposition, frequently applied in the case of sections of the code which are preceded by sub-head or title, that such sub-head or title may have the effect of making the language of the section more certain and limited in its application. The construction given to the clause considered in the Blochman case was necessarily based upon the theory that the word "work" in the phrase, "nature of the work to be done under this specification," referred to the completed work, the pavement itself, and not to the process of doing the work. The word "work" has numerous variations of meaning. Webster defines it as "State of activity working or operating"; also as "That which one is doing"; and as "That which is produced; structures." In the Blochman case the word was given the meaning last stated. In the specification in the case at bar the word appears in different company and in a connection which necessarily gives it the meaning first stated. It makes the contractor "responsible for all loss, damage or injury to persons, property, or the *work*, due to the nature of the *work* or the action of the elements." Here are three things to which damages may be caused: 1. persons; 2. property; 3. the work. The thing which is to cause the damage, as contemplated by the specification, is "the nature of the work." In the Blochman case this was held to mean the completed work. In the present case it could not mean this, because one of the things which may be damaged is "the work," and if it were given this meaning we would have the work itself, that is the completed work, injuring itself. The phrase "nature of the work," in the last clause in the specification, necessarily must refer to the character of the operations carried on by the contractor in the construction of the pave-

ment, otherwise the clause would be absurd upon its face. The only reasonable construction of this part of the clause, therefore, is that it was intended to make the contractor liable for all injuries to persons, property, or the pavement to be constructed, by reason of his negligence in constructing the pavement, or, to more closely follow its language, by reason of the nature of his operations in carrying on the work of construction. So construed, there is nothing in it which violates the law or which would have the effect of invalidating the contract.

In *Gay* v. *Engebretsen,* 158 Cal. 21, [139 Am. St. Rep. 67, 109 Pac. 876,] we had under consideration a similar specification, whereby the contractor was made responsible for "all loss or damage arising from the nature of the work to be done under these specifications, during the progress of the work, and before the acceptance thereof, from any act or omission on the part of the contractor," and whereby he agreed to hold the city harmless from any suits for damages arising from or out of and during the performance of the work. It was there held that a provision which made the contractor responsible for the consequences of his own negligence or carelessness in the construction of the improvement contracted for was not improper or fatal to the validity of the street assessment.

Certain other objections are made to the validity of the proceedings which it is necessary to consider. The specifications are not set out at length in the resolution of intention or in the resolution ordering the work to be done, but are referred to therein by reference to the specifications on file in the clerk's office and to ordinance No. 131 prescribing the said specifications. The objection that this is not a sufficient description of the work is disposed of by the decision of this court in *Chase* v. *Trout,* 146 Cal. 367, [80 Pac. 81].

Section 4 of the specifications provides that "no work or materials for which a contract has been made under the provisions of these specifications shall be changed or omitted, excepting upon order of the board of trustees, certified by the clerk thereof. Additional work in connection with that under contract will be allowed only upon the order of the board of city trustees, certified by the clerk. The price to be added to or deducted from, the contract price for any added, changed or omitted work or materials shall be stated in the order of

the board of city trustees, authorizing such addition, change or omission." It is claimed that this provision gives the city trustees power to make changes in the contract and in the work to be done thereunder and that this invalidates the proceedings. As before stated, the ordinance in which these specifications are contained is a general ordinance and the specifications include those for work done under the Vrooman Act or under street improvement acts, providing for assessments upon private property, and also for work to be done by the city under direct contract and to be paid for out of the general funds. The provision above quoted does not give the city trustees any power to change the contract. It only provides that if a change is intended it cannot be made except by order of the trustees. We do not think that this applies to contracts for street work made under assessment acts. Such contracts cannot be materially changed after they have been let in accordance with the statute. If in connection with this contract the city desired to have other work done and the contractor and the city could agree upon the terms upon which such work should be done, this section of the ordinance might be applicable thereto, but it would not in any respect affect or change the contract for the particular improvement to be done under the proceedings in question.

Section 5 of the ordinance in question provided that "any materials, apparatus or plant owned by the city may be furnished, loaned or hired to the contractor, upon such terms as may be stipulated in the contract therefor." It is suggested that this invalidates the proceedings because it is possible that prospective bidders might have had a private understanding with the officers of the city by which they could have procured such materials, apparatus or plant at lower rates than would have been allowed to other bidders, and that this would allow unfair competition. There is nothing in the provision which would secure to one contractor more than to another the privilege of making such contracts with the city for the use of any property which the city might have which would be available in the construction of the improvement, or which could be made the basis for any discrimination between bidders. This section also requires the contractor to employ no one but competent and faithful laborers, and requires him to dismiss any employee who fails to perform the work satis-

factorily to the city authorities. We can see nothing improper in this provision. It does not give the city authorities absolute power to arbitrarily dismiss an employee whether he was competent or faithful or not. It only allows such action by the city authorities when the employee is in fact incompetent or unfaithful. There is nothing improper in the clause giving the city the right to demand the dismissal of such employees.

Section 13 provides that the wearing surface shall be composed of asphaltic cement sixteen to twenty parts, sand eighty to sixty-five parts, and stone dust "as required." It is claimed that this leaves the amount of stone dust entirely indefinite and makes the contract void. This, however, must be read in connection with sections 16 and 18, which provide that the materials must be mixed in proportion by weight, depending upon their character, within the limits specified, and that the stone dust must be used in such proportions that the mixture of sand, cement, and dust will pass at least ten per cent through a one hundred-mesh screen. Asphaltic cement will vary in its consistency and sand will necessarily vary in the size of its particles. The statement that stone dust is to be used as required, does not mean that it shall be used as required by the city engineer or the city trustees, but that so much of it shall be used as may be required to make the mixture pass ten per cent through the screen aforesaid. Thus understood, there is nothing objectionable in the specification. We do not think there is any such indefiniteness or uncertainty in the provisions of section 14 prescribing the character of the asphaltic cement, or in section 17 describing the broken rock or gravel to be used where specified, as to make the proceeding invalid. Many of such minor details must necessarily be left to the decision of the officer in charge of the work. This subject was discussed at length in the recent case of *McCaleb* v. *Dreyfus*, 156 Cal. 206, [103 Pac. 924]. We cannot add anything to the argument there made. It shows clearly that such minor details may be provided for by leaving them to the supervision of the officer in charge of the work, who, it is to be presumed, will faithfully and honestly perform his official duty. There is nothing in the objection that section 17 gives the city or the street superintendent power to determine whether the contractor shall use broken rock or clean river gravel. The effect of the specification is that either may be used by the

contractor at his option, but that whichever material is used must be of the quality there prescribed.

We do not find any other defects in the specifications or proceedings in which the bonds were issued which require notice. The proceeding was apparently conducted in accordance with law and the bonds constitute valid liens upon the property. The court below erred in declaring that they were void.

The order appealed from is reversed.

Angellotti, J., and Lorigan, J., concurred.

BEATTY, C. J., concurring.—I concur in the judgment, and in all material particulars in the opinion of Justice Shaw. The following observations are added only for the purpose of emphasizing the importance of limiting more carefully than has been done in some of the cases followed by the superior court, the application of the principle established by the decision in *Brown* v. *Jenks,* 98 Cal. 10, [32 Pac. 701]. It was there held, and I think correctly held, that a contract for street paving to be binding upon abutting owners, must not impose upon the contractor the duty of keeping the pavement in repair after completion of his contract and acceptance of the work; and this upon the ground that the necessary effect of such a contract would be to impose upon abutting owners the cost of insuring against defects inherent in the plan and specifications of the work—a liability not contemplated by the statute. It was a mistake in my opinion to apply this principle in deciding the case of *Blochman* v. *Spreckels,* because the contract there in question would easily have borne a construction limiting the liability imposed upon the contractor to the risks assumed by him in undertaking the work, and to the consequences of his own negligence in carrying it out—a construction to be preferred to one which rendered the contract invalid. I dissented from the decision in that and a companion case, and ever since have hoped to see them overruled, being entirely convinced that they and the whole line of decisions in which they have been followed, so far from subserving the policy they were designed to promote have simply tended to subvert it. Instead of encouraging competition among contractors bidding upon such improvements, the effect has been to

diminish competition and to lay upon abutting owners a heavier, and in many cases, an intolerable burden. This serious and growing evil, I think, requires the courts to limit as strictly as possible the doctrine of *Blochman* v. *Spreckels* in its application to the construction of contracts differing in language from that which was there construed. I thought, and still think, this might have been done in *Woolacott* v. *Meekin,* and despite that precedent I think it may be done in this case.

In the argument some stress has been laid upon the fact that the Hanford ordinance was passed two years after the decision in *Blochman* v. *Spreckels,* and the work here in question ordered nearly two years later; from which it is inferred, that contractors generally, being aware of the infirmity in the resolution of intention, order for the work, and contract, failed to compete in the bidding, with the result that the price at which the contract was awarded was excessive in proportion to the risks they supposed to be involved. This may, in fact, have been so, but it is a sounder legal inference that the city council of Hanford, being aware at the time its ordinance was adopted of the unfortunate consequences resulting from the wording of the San Diego ordinance, deliberately chose a different phraseology for the express purpose of invoking a different and more beneficial construction. I think myself that there is a difference sufficient to exempt this case (in which the contract was made and performed before the decision in *Woolacott* v. *Meekin*), from the rule of *stare decisis.*