[Civ. No. 1317. Second Appellate District.—February 17, 1914.]

## W. J. HUNT, Appellant, v. C. D. MANNING et al., Respondents.

STATUTES—TITLE OF ACT—PURPOSE OF CONSTITUTIONAL REQUIRE-MENTS.—The reason underlying the insertion of the provision in the constitution that every act shall embrace but one subject, which subject shall be expressed in its title, was to prevent legislative abuses or the passage of acts bearing misleading and deceitful titles which give no indication of the matters contained therein.

ID.—COMPREHENSIVE TITLE—MATTERS GERMANE TO GENERAL SUBJECT.—Such provision was never intended to prevent a legislature from treating all the various branches of the same general subject in one law, or from inserting in a single act all the legislation germane to the general subject.

ID.—STREET LAW—TITLE OF ACT—SUFFICIENCY WITHIN CONSTITUTIONAL REQUIREMENTS.—The title of the Street Law (Stats. 1907, p. 806) as "an act to provide for work upon the public roads, streets, avenues, boulevards, lanes and alleys not within the territory of incorporated cities or towns; for the incidental establishment of grades thereof; for the construction therein or thereon of sidewalks, sewers, manholes, bridges, cesspools, gutters, tunnels, curbing and crosswalks; for the issue of bonds representing the cost and expenses thereof; for a special fund derived in part from the county road fund and in part by special assessment upon a district, and for the establishment of such districts," sufficiently expresses the objects to be accomplished by the legislation and answers the requirements that every act shall embrace but one subject, which subject shall · be expressed in its title.

ID.—MATTERS GERMANE TO SUBJECT, BUT NOT SPECIFICALLY MENTIONED IN TITLE.—The matters of oiling and paving the surface of streets, etc., while not specifically mentioned in the title of such act, are strictly germane to the general subject of the act as first expressed in the title.

ID.—WORDS GIVING GENERAL SCOPE OF ACT ARE NOT RESTRICTED BY OTHER SPECIFIC TERMS.—The words in the first part of the title giving general scope to the act are not limited by the subsequent terms of particular description; the latter are used in amplification of the meaning of the general clause, not in restriction or limitation of it.

ID.—EJUSDEM GENERIS—RULE INAPPLICABLE.—The rule of *ejusdem generis*, which merely requires that where general and special terms of definition are employed, all relating to the same things, the

special terms limit and make certain the general ones, is not applicable in construing the title to an act.

ID.—ESTABLISHMENT OF ASSESSMENT DISTRICT—BENEFITS FROM IMPROVEMENTS—PRESUMPTION IN FAVOR OF ACTS OF OFFICERS.— Where a street law does not provide that in determining the boundaries of the assessment district the board of supervisors shall include only property which it is considered will be benefited by the work, the presumption of good faith and fair action that accompanies the acts of public officers will be indulged, and it must be assumed that the board properly considered and determined all the property included within an established district would be benefited.

ID.—STREET IMPROVEMENT—DAMAGE TO ABUTTING OWNER.—Ordinarily it must be assumed that an abutting property owner will not suffer damage different from that common to all of such owners by reason of the improvement of the street; but if he can show such damage, which is classed as indirect or consequential, he will be entitled to his action therefor.

ID.—CONTRACT FOR STREET WORK—SPECIFICATIONS AS TO DISPOSITION OF WASTE MATERIAL.—A provision in a contract for the improvement of a street that whenever, in the opinion of the engineer, it is necessary to waste excavated material outside of the lines of the streets, the contractor shall move such waste material to places outside the street, and spread the same in a workmanlike manner, does not invalidate the contract on the theory that the cost of the work may thereby be materially increased and bidders influenced to fix the cost at a higher amount than they otherwise would.

ID.—DISCHARGE OF EMPLOYEES FOR IMPROPER WORK—SPECIFICATIONS REQUIRING.—A provision in such contract which requires that employees of the contractor, who fail to perform their work in accordance with the specifications, shall be discharged, does not inject an element of uncertainty into the matter of the performance of the contract which may prevent bidders from bidding intelligently, or result in increasing the cost of the work.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Fred V. Wood, Judge presiding.

The facts are stated in the opinion of the court.

A. J. Sherer, and Arthur G. Baker, for Appellant.

J. D. Fredericks, District Attorney, Robert Young, A. J. Hill, and B. C. Hanna, for Respondents.

JAMES, J.—Proceedings were taken by the board of supervisors of Los Angeles County for the improvement of certain streets lying outside of incorporated cities and towns. A contract was made with respondent Gentry for the doing of the work, which work was to include the construction of cement sidewalks, curbs, and gutters and the grading and graveling of the streets mentioned in the contract. Appellant, as a resident of and an owner of real property within the improvement or assessment district created, brought this action to prevent the contractor from proceeding with the work and to restrain the county treasurer from issuing bonds to cover the cost thereof. Judgment, after trial had, was in favor of defendants. The appeal is taken from that judgment and from an order made denying plaintiff's motion for a new trial. The facts were stipulated and certain questions of law are presented for consideration.

The proceedings, the validity of which is called into question, were taken under an act of the legislature entitled: "An act to provide for work upon the public roads, streets, avenues, boulevards, lanes and alleys not within the territory of incorporated cities or towns; for the incidental establishment of grades thereof; for the construction therein or thereon of sidewalks, sewers, manholes, bridges, cesspools, gutters, tunnels, curbing and crosswalks; for the issue of bonds representing the cost and expenses thereof; for a special fund derived in part from the county road fund and in part by special assessment upon a district, and for the establishment of such districts." (Stats. 1907, p. 806.) In the body of the act it is provided that authority is given to the board of supervisors of every county in the state "to grade or re-grade to the official grade, plank or re-plank, pave or re-pave, macadamize or re-macadamize, gravel or re-gravel, pile or re-pile, cap or re-cap, oil or re-oil the whole or any portion of roads, streets, avenues, boulevards, lanes or alleys so far as not within the territory of any incorporated city or town, . . . and to construct therein or thereon sidewalks, sewers, manholes, culverts, bridges, cesspools, gutters, tunnels, curbing and crosswalks. . . ."

The first contention made is that the title of the act does not fulfill the requirements of section 24 of article IV of the constitution, which provides that "every act shall embrace

but one subject, which subject shall be expressed in its title.
. . ." Our supreme court has considered the reason under-
lying the insertion of this provision in the constitution and
has said that the purpose was to prevent legislative abuses or
the passage of acts bearing misleading and deceitful titles
which give no indication of the matters contained therein.
(*Law* v. *San Francisco,* 144 Cal. 384, [77 Pac. 1014].)   In
the opinion filed in that case a quotation is made with ap-
proval from a federal court decision, where it is declared that
such a provision in a constitution was never intended to pre-
vent a legislature from treating all the various branches of
the same general subject in one law, or from inserting in a
single act all the legislation germane to the general subject.
In *Hellman* v. *Shoulters,* 114 Cal. 136, [44 Pac. 915, 45 Pac.
1057], it was determined that an amendment to the Vrooman
Street Act [Stats. 1885, p. 160] by which were added provisions
respecting the issuance of bonds, treated of purposes germane
to the general subject of street improvement therein provided
for, and that the title to the principal act, which was ex-
pressed in general terms, sufficiently defined the objects to be
accomplished, including those covered by the amendment.
The matters of oiling and paving the surface of streets, etc.,
while not specifically mentioned in the title of the act here in
question, are strictly germane to the general subject of the
act as first expressed in the title.   The further question is
argued as to whether, because the title of the act, after first
declaring the general subject to be treated of, enumerates cer-
tain specific things as being included within the purpose of
the law, the words giving general scope to the act are limited
by the purposes which are more particularly stated.   Keeping
in mind the rule that the legislative intent is to be given
full effect, and no part of an act declared void where, by ap-
plying a reasonable construction, it may be upheld, it would
seem a fair interpretation to apply here to say that the terms
of particular description contained in the title are used in
amplification of the meaning of the general clause, and not in
restriction or limitation of it.   The rule formulated under the
doctrine of *"ejusdem generis"* is not violated by this con-
struction.   That rule merely requires that where general and
special terms of definition are employed, all relating to the
same things, the special terms limit and make certain the gen-

eral ones.   This rule has not been held to be properly applicable in a strict sense where a public statute is being construed and for stronger reason it should not be held applicable in construing the mere title to an act.   The title is intended only to indicate the purpose of the legislation which the act following it embraces, and, as has been just expressed, the effort of the courts must be to give such a construction to legislative enactments as will make them effective and not nullify them. The Missouri appellate court, in *State* v. *Broderick,* 7 Mo. App. 19, has said: "The rule of *ejusdem generis* in statutory construction is by no means a rule of universal application, and its use is to carry out, not to defeat, the legislative intent.   When it can be seen that the particular word by which the general word is followed was inserted, not to give a coloring to the general word, but for a distinct object, and when, to carry out the purpose of the statute, the general word ought to govern, it is a mistake to allow the *ejusdem generis* rule to pervert the construction."   The title of the act here considered sufficiently expresses the objects to be accomplished by the legislation and answers the requirements of the section of the constitution referred to.

That the contract made with respondent Gentry, if carried out and the cost thereof assessed against the property of the road improvement district, as formed pursuant to the provisions of the act, will result in some of the property being assessed without benefit accruing thereto, is another contention advanced by appellant.   It was not alleged nor made to appear that all of the property included within the assessment district would not be benefited, whether more or less, by the proposed improvement.   The act, it is true, does not provide that in determining the boundaries of the assessment district the board of supervisors shall include only property which it is considered will be benefited by the public work, but attention is called to no authority holding that such a provision is essential to the validity of such a statute.   As the power to specially tax in the manner proposed by this act can only be exercised upon the theory that benefits will accrue to the property affected thereby, the presumption of good faith and fair action that accompanies the acts of public officers is entitled to be indulged, and it then must be assumed that the board of supervisors properly considered and determined that

all of the property included within the established district would receive benefits from the doing of the work. As is said by respondents, the benefit need not be direct, citing *Lent* v. *Tillson,* 72 Cal. 429, [14 Pac. 71]. The district described in the proceedings had herein, embraced contiguous property, all of which might well receive some benefit from the improvement of the streets described in the contract. The case is very different from that considered in *Southwick* v. *Santa Barbara,* 158 Cal. 14, [109 Pac. 610], where the court said: "It appears from the complaint that the engineer reported as 'the district to be benefited by said improvement,' . . . two separate and distinct sections of the city that are not contiguous, and that are alleged to be separated at their nearest points to one another by nearly one-half of a mile."

It is also complained that the act seems to authorize the taking of private property without awarding compensation therefor. The provisions of the act contemplate improvement work to be done upon streets and public ways already laid out and established. Ordinarily it must be assumed an abutting property owner will not suffer damage different from that common to all of such owners by reason of the improvement of the street. If he can show such damage, which is classed as indirect or consequential, he will be entitled to his action therefor. (*Eachus* v. *Los Angeles etc. Ry. Co.,* 103 Cal. 614, [42 Am. St. Rep. 149, 37 Pac. 750].)

The specifications for the work contained the following clauses which it is insisted invalidate the contract: "Whenever, in the opinion of the engineer, it is necessary to waste excavated material outside of the lines of the streets, the contractor shall move such waste material to places outside the street, and spread the same in a workmanlike manner"; and "Any overseer, superintendent, laborer or other person employed on the work by the contractor, who shall perform his work in a manner contrary to these specifications, shall be discharged immediately and such person shall not again be employed on the work." It is claimed that by the first provision mentioned there is placed within the power of the engineer the right to materially increase the cost of the work, and that because of such possibility the bidders for the contract will be influenced in fixing the cost at a higher amount than they otherwise would, and so increase the burden of the prop-

erty owner.   No doubt but that were the provision respecting waste material wholly absent from the contract, the contractor would be required in the performance of his work to clear the street of such waste material, and the mere additional requirement that he shall "spread the same in a workmanlike manner" could not, in giving the provision practical effect, cause an uncertainty as to the cost which would void the contract. It seems very plain that the engineer cannot require the contractor to carry waste material to any distance away from the line of the work that he may choose to direct, but only that when a convenient place is found where it may be deposited the contractor shall leave the material so deposited in a reasonably level condition.   As to the provision which requires that employees of the contractor who shall fail to perform their work in accordance with the specifications shall be discharged, that provision does not inject an element of uncertainty into the matter of the performance of the contract which might prevent bidders from bidding intelligently, or result to increase the cost of the work.   A similar condition in a street contract has been held to be a reasonable one. (*McQuiddy* v. *Worswick Street Paving Co.*, 160 Cal. 9, [116 Pac. 67].)   In that decision the court uses language which is directly applicable here when it declares: "We can see nothing improper in this provision.   It does not give the city authorities absolute power to arbitrarily dismiss an employee whether he was competent or faithful or not.   It only allows such action by the city authorities when the employee is in fact incompetent or unfaithful.   There is nothing improper in the clause giving the city the right to demand the dismissal of such employees."

All of the objections urged as affecting the validity of the statute and the proceedings had thereunder have been considered, and no reason appears why the judgment and order should not be affirmed.

The judgment and order are affirmed.

Conrey, P. J., and Shaw, J., concurred.